UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:                                                                          Case No. 08-46854

Jhony A. Parra,                                                           Chapter 7
                       Debtor.
-----------------------------------------------------------x
E. Armata, Inc.
and A&J Produce Corp.     Plaintiffs,
                                                          Adv. Pro. No. 08-1439
         -against-

Jhonny Parra, a/k/a :
Jhony Parra, Johnny Parra and
J&A Produce,
                       Defendant.
-------------------------------------------------------------x

## DECISION

Appearances:

Bruce Levinson, Esq.                               Eugene M. Banta, Esq.
Law Offices of Bruce Levinson            Uvino, Banta & Associates, P.C.
747 Third Avenue                                   118-21 Queens Blvd.
New York, NY 10017-2803                    Forest Hills, NY 11375
Attorney for Plaintiffs                              Attorney for Defendant


CARLA E. CRAIG
Chief United States Bankruptcy Judge

1

This matter comes before the Court on the motion of E. Armata, Inc. ("Armata") and A&J Produce Corp. ("A&J") (collectively, the "Plaintiffs") for summary judgment on their complaint against Jhony Parra (the "Defendant" or "Parra"), seeking to have the debts owed to them by the Defendant declared nondischargeable pursuant to 11 U.S.C § 523(a)(4). Additionally, the Plaintiffs have moved to strike the Defendant's opposition to the Plaintiffs' motion for summary judgment as untimely filed. For the reasons set forth below, the motion for summary judgment is granted in part and denied in part, and the motion to strike is denied.

## Jurisdiction

This Court has jurisdiction of this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(I) and 1334, and the Eastern District of New York standing order of reference dated August 28, 1986. This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

## Facts

The following material facts in this case are undisputed.

The Plaintiffs are corporations engaged in the business of buying and selling wholesale quantities of perishable agricultural commodities (hereinafter, "produce") in interstate commerce. The Plaintiffs, at all relevant times, were dealers in produce subject to and licensed under the Perishable Agricultural Commodities Act of 1930 ("PACA"), as amended in 1984, 7 U.S.C. §499a et seq. The Defendant formerly did business as J&A Produce, which was a dealer and a commission merchant subject to PACA. The Defendant started his business in 2007. Between June 17, 2008 and August 7, 2008, Armata sold and delivered to the Defendant, wholesale amounts of produce worth $39,543.22, which was accepted by the Defendant.

2

Between July 22, 2008 and August 18, 2008, A&J sold and delivered to the Defendant, wholesale amounts of produce worth $48,944.48, which was accepted by the Defendant. The Plaintiffs preserved their interests under the trust provisions of PACA in accordance with 7 U.S.C. §499e(c)(4) by sending invoices to the Defendant which contained the requisite statutory language. The Defendant was in a position of control over the PACA trust assets belonging to the Plaintiffs. On September 8, 2008, Plaintiffs filed a complaint against Jhonny Parra, a/k/a Jhony Parra, Johnny Parra and J&A Produce in the United States District Court for the Southern District of New York to enforce their trust rights under PACA. On September 17, 2008, the District Court entered a Preliminary Injunction Order against the Defendant prohibiting the Defendant from alienating or dissipating any PACA trust assets belonging to the Plaintiffs. On October 14, 2008, the Defendant filed for protection under Chapter 7 of the Bankruptcy Code. The Defendant's bankruptcy schedules reflect debts owed to A&J in the amount of $49,000.00 and to Armata in the amount of $39,500.00. The Defendant's schedules also reflect accounts receivable due and owing to the Defendant, in the approximate amount of $30,000.00. The Plaintiffs filed their Complaint seeking a determination of nondischargeability under 11 U.S.C. 523(a)(4) on December 16, 2008.

Standard for Summary Judgment

Summary judgment is appropriate when the record shows that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The court's function is not to resolve disputed issues of fact, but only to determine whether there is a genuine issue of material fact to be tried. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249

(1986). A fact is considered material if it "might affect the outcome of the suit under the governing law." Id. at 248. No genuine issue exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citation omitted). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). On the other hand, if "there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994) (citation omitted).

## Discussion

The Bankruptcy Code excepts from discharge debts that are a result of "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). The Plaintiffs contend that the debt owed to them by the Defendant is nondischargeable because the Defendant's failure to hold PACA trust assets for their benefit, pursuant to PACA § 499e(c)(2), constitutes "defalcation" while acting in a fiduciary capacity within the meaning of 11 U.S.C. § 523(a)(4).

PACA

"Congress enacted PACA in 1930 to regulate the interstate sale and marketing of perishable agricultural commodities." Coosemans Specialties, Inc. V. Gargiulo, 485 F.3d 701, 705 (2d Cir. 2007). In 1984, Congress amended PACA to require buyers to maintain a statutory trust, "'to increase the legal protection for unpaid sellers and suppliers of perishable agricultural

4

commodities until full payment of sums due have been received by them.'" "R" Best Produce v. Shulman-Rabin Mktg., Corp., 467 F.3d 238, 241 (2d. Cir. 2006) (quoting H.R. Rep. No. 98-543, at 2 (1983), reprinted in 1984 U.S.C.C.A.N. 406). Under PACA, "perishable commodities or proceeds from the sale of those commodities are held in trust by the buyer for the benefit of the unpaid seller until full payment is made." Coosemans Specialties, 485 F.3d at 705. PACA § 499e(c)(2) provides in pertinent part:

> Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.

7 U.S.C. § 499e(c)(2). "'This trust arises from the moment perishable goods are delivered by the seller.'" Top Banana, L.L.C. v. Dom's Wholesale & Retail Ctr., Inc., 2005 U.S. Dist. Lexis 8976, *14 (S.D.N.Y. May 16, 2005) (quoting Morris Okun, Inc. V. Harry Zimmerman, Inc., 814 F. Supp., 814 F. Supp. 346, 348 (S.D.N.Y. 1993)). "While the trust is automatically created under the statute, the unpaid seller will lose the trust benefits unless he 'gives written notice of his intent to preserve the benefits of the trust'" in accordance with PACA. Bronia, Inc. V. Ho, 873 F. Supp. 854, 857 (S.D.N.Y. 1995) (quoting 7 U.S.C. § 499e(c)(4)); A&J Produce Corp. V. Chang, 385 F. Supp. 2d 354, 361-362 (S.D.N.Y. 2005) (proper notice under the "invoice method" pursuant to 7 U.S.C. § 499e(c)(4) requires supplier to deliver to the retailer, invoice

5

statements that include the requisite statutory language). It is undisputed that the Plaintiffs satisfied the notice requirement under 7 U.S.C. § 499e(c)(4).

The PACA trust is a "non-segregated floating trust" on perishable commodities and their derivatives, which "permits the commingling of trust assets without defeating the trust." Endico Potatoes v. CIT Group/Factoring, Inc., 67 F.3d 1063, 1067 (2d. Cir. 1995). Therefore, a PACA trustee may use trust assets to satisfy other creditors, but not to the detriment of the trust beneficiaries. D.M. Rothman & Co. V. Korea Commer. Bank, 411 F.3d 90, 94 (2d Cir. 2005). To satisfy obligations under PACA, PACA trustees "are required to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities. Any act or omission which is inconsistent with this responsibility, including dissipation of trust assets, is unlawful." 7 C.F.R. § 46.46(d)(1). "Dissipation" includes "any act or failure to act which could result in the diversion of trust assets or which could prejudice or impair the ability of unpaid suppliers, sellers, or agents to recover money owed in connection with produce transactions." Id. § 46.46(a)(2). "An individual who is in a position to control the assets of the PACA trust and fails to preserve them, may be held personally liable to the trust beneficiaries for breach of fiduciary duty." Coosemans Specialties, 485 F.3d at 705.

The Defendant contends that he never "dissipated" trust assets because the business never accumulated any money. (Defendant's Aff.[1] 4.) The Defendant explains that since its inception in 2007, he never profited from the business. (Defendant's Aff. 7.) He further explains that the

---

[1] Citations to "Plaintiff's Aff." refer to the Defendant's Affidavit in Opposition to the Plaintiffs' summary judjment motion, filed on May 13, 2009.

business he transacted was all in cash, and that the money he did collect went directly to pay suppliers and operating expenses.  (Defendant's Aff. 6.)  The Defendant claims that his business ultimately failed because one store he sold produce to went out of business in May, 2008, before he could collect $30,000 in unpaid receivables.  (Defendant's Aff. 5.)

Even if these assertions are accepted as true, it is clear that the Defendant breached his fiduciary duty under PACA.  Although the trust assets may be used to pay other creditors, it is well established that as a PACA trustee, the Defendant's first obligation was to insure that any sale proceeds he received from the sale of the perishable goods, were "freely available to satisfy outstanding obligations to" the Plaintiffs.  7 C.F.R. § 46.46(d)(1); D.M. Rothman, 411 F.3d at 94 (noting that PACA trust assets may be used for other purposes, but trustee must "insure that it has sufficient assets to assure prompt payment" in full to trust beneficiaries); C.H. Robinson Co. V. Alanco Corp., 239 F.3d 483, 488 (2d Cir. 2001) ("PACA trust beneficiaries are entitled to full payment before trustees may lawfully use trust funds to pay other creditors.").

Moreover, the Defendant is not excused from his fiduciary duties under PACA because he failed to collect $30,000 in receivables.  Bronia, 873 F. Supp. at 861 (holding that failed attempt to collect money does not satisfy trustee's duty to pay beneficiary under PACA).  To the contrary, "[r]elinquishing control of the commodities without securing payment is "dissipation of the trust assets."  Id.  (rejecting defendant's argument that he should not be liable for unpaid invoice amounts because his failure to pay was due to uncollected receivables); Consumers Produce Co. V. M&T Chirico, Inc., 2005 US Dist. LEXIS 43114, *9 (W.D.N.Y. Sept. 30, 2005) (holding that PACA imposes personal liability for dissipation of trust assets "regardless of the inability to collect proceeds from the resale of the commodities").

The Defendant incorrectly asserts that PACA does not apply unless payment for the PACA merchandise has been received by the PACA trustee. Relying on <u>Strube Celery & Vegetable Co. V. Zois (In re Zois)</u>, 201 B.R. 501 (Bankr. N.D. Ill. 1996), the Defendant maintains that to the extent the debt owed to the Plaintiffs is found non-dischargeable under § 523(a)(4), any judgment should be reduced by the $30,000 that he failed to collect. <u>Zois</u> does not support this argument. There, the court denied the plaintiff's motion for summary judgment because it was "not established that the goods in question were all resold, thus bringing the sale proceeds under the PACA trust." <u>Id.</u> at 510. The court explained that:

> [T]o the extent, if any, [the goods] rotted away unsold, then the trust res disappeared, leaving only the obligation to pay for those unsold goods as a personal debt outside the PACA provisions. To the extent, if any, that [d]ebtors' failure to pay [p]laintiff was due to [d]ebtors' inability to market any perishable goods involved here, they did not breach their PACA [t]rust obligations . . . . *Only to the extent that [d]ebtors did market the perishable commodities and failed to remit to [p]laintiff did [d]ebtors breached [sic] their PACA Trust obligations, and thereby effect a defalcation under §523(a)(4).*

<u>Id.</u> at 509. (Emphasis added). Here, it is undisputed that the Defendant sold the goods and failed to secure payment.

Thus, the Defendant breached his fiduciary duty under PACA by failing to preserve trust assets for the benefit of the Plaintiffs until they received payment in full. However, the question presented in this adversary proceeding is whether the Defendant's breach constitutes defalcation while acting in a fiduciary capacity under § 523(a)(4).

Dischargeability under § 523(a)(4)

"To prevail under § 523(a)(4), the challenging creditor must show that (1) the debtor acted in a fiduciary capacity; and (2) the debtor committed defalcation while acting in that capacity." A.J. Rinella & Co. V. Bartlett (In re Bartlett), 397 B.R. 610, 619 (Bankr. D. Mass. 2008); Zohlman v. Zoldan (In re Zoldan), 226 B.R. 767, 772 (S.D.N.Y. 1998). The Plaintiffs argue that the Defendant was acting in a fiduciary capacity, as a trustee under the PACA trust for purposes of § 523(a)(4), and that his failure to hold the proceeds from the sale of the produce in trust, constitutes defalcation while acting in that fiduciary capacity. "The question of whether a defalcation has occurred is reached only when the threshold determination that the debtor acted in a fiduciary capacity has been made." The Andy Warhol Found. for Visual Arts, Inc. v. Hayes, 183 F.3d 162, 170 (2d. Cir 1999).

(A) Fiduciary Capacity

The term "fiduciary capacity" is determined by federal law, and is "narrowly construed." Peerless Ins. Co. V. Casey (In re Casey), 181 B.R. 763, 766 (Bankr. S.D.N.Y 1995) (citing Davis v. Aetna Acceptance Co., 293 U.S. 328, 55 S. Ct. 151, 79 L. Ed. 393 (1934)); Zoldan, 226 B.R. at 772 (noting that a "broad, general definition of fiduciary, involving confidence, trust and good faith, is not applicable in dischargeability proceedings under § 523(a)(4)"). "A debtor will be considered a fiduciary for dischargeability purposes if the debtor is a trustee either under an express or technical trust." Bartlett, 397 B.R. at 619. "A technical trust is one imposed by statutory or common law and will exist where the statute (1) defines the trust res, (2) identifies the trustee's fiduciary duties, and (3) imposes a trust prior to and without reference to the wrong that created the debt." Id.

The majority of courts to address this question have held that the trust imposed by Congress under PACA constitutes a technical trust which gives rise to the requisite fiduciary capacity for purposes of § 523(a)(4). Bartlett, 397 B.R. at 620; Collins Bros. Corp. v. Perrine (In re Perrine), 2007 Bankr. LEXIS 3727, *7 (Bankr. N.D. Ga. 2007); KGB Int'l, Inc. V. Watford (In re Watford), 374 B.R. 184, 190-191 (Bankr. M.D.N.C. 2007); Gen. Produce, Inc. V. Tucker (In re Tucker), 2007 Bankr. LEXIS 1322, *12 (Bankr. M.D. Ga. Apr. 10, 2007); Consumers Produce Co. V. Masdea, 307 B.R. 466, 474 (Bankr. W.D. Pa. 2004); In re Fishgold, 206 B.R. 50 (W.D.N.Y. 1997) (noting that relief under 523(A)(4) is available to the beneficiaries of PACA trusts); Zois, 201 B.R. at 509; Stout, 123 B.R. 412 (Bankr. W.D. Okla. 1990).

The Defendant relies on a single case for the proposition that a PACA trust is not a technical trust and therefore does not create a fiduciary obligation under § 523(a)(4). In Cardile Bros. Mushroom Pkg., Inc. v. McCue (In re McCue), 324 B.R. 389 (Bankr. M.D. Fla. 2005), the court held that a trust created under PACA is not a technical trust because it does not include a segregated res. Id. at 394. However, "an express trust requires an *identifiable* res, but not a segregated res." Tucker, 2007 Bankr. LEXIS 1322 at *10 (rejecting debtor's argument, relying on McCue, that PACA does not create a technical trust for purposes of § 523(a)(4)). "Although a segregation component may strengthen the argument for an express trust, segregation is not required so long as the trust res is identifiable." Id. at *12.

PACA trusts satisfy the requirements for a technical trust. PACA defines both the res of the PACA trust and the duties of a PACA trustee. 7 U.S.C. § 499e(c)(2). Further, a PACA trust is created automatically "from the moment perishable goods are delivered by the seller," Top Banana, 2005 U.S. Dist. Lexis 8976 at 14 (citation omitted), and therefore is created "prior to

10

and without reference to the wrong that created the debt." Bartlett, 397 B.R. at 619. This court joins the courts finding that a trust imposed under PACA is a technical trust for purposes of satisfying the fiduciary capacity requirement under § 523(a)(4). Bartlett, 397 B.R. at 620; Perrine, 2007 Bankr. LEXIS 3727 at *7;  Watford, 374 B.R. at 191; Tucker, 2007 Bankr. LEXIS 1322 at *12.

    (B) Defalcation

A creditor has the burden of establishing defalcation by a preponderance of the evidence. Bartlett, 397 B.R. at 619 (citing Grogan v. Garner, 498 U.S. 279, 286, 11 S. Ct. 654, 112 L. Ed. 2d 755 (1991)).  "Defalcation is not defined in the Bankruptcy Code." Chao v. Duncan (In re Duncan), 331 B.R. 70, 86 (Bankr. E.D.N.Y. 2005).  While other circuits have held that an innocent mistake may constitute defalcation, the Second Circuit, in Denton v. Hyman (In re Hyman), 502 F.3d 61, 68 (2d Cir. 2007), aligning itself with the First Circuit, held that defalcation, for purposes of § 523(a)(4) "require[s] a showing of conscious misbehavior or extreme recklessness-a showing akin to the showing required for scienter in the securities law context." Hyman, 502 F.3d at 68 (citing in Rutanen v. Baylis (In re Baylis), 313 F.3d 9, 20 (1st Cir. 2002)); Press v. Chem. Inv. Servs. Corp., 166 F.3d 529, 538 (2d Cir. 1999).  This standard comports with the Bankruptcy Code's "fresh start" policy, Baylis, 313 F.3d at 19, and "ensures that the term 'defalcation' complements but does not dilute the other terms of the provision– 'fraud', 'embezzlement', and 'larceny' – all of which require a showing of wrongful intent." Hyman, 502 F.3d at 68.  This standard "has the virtue of ease of application since the courts and litigants have reference to a robust body of securities law examining what these terms mean." Id. at 69.

This standard has been summarized by the Second Circuit as follows:

> [t]he scienter needed in connection with securities fraud is intent to deceive, manipulate, or defraud, or knowing misconduct. As a pleading requirement, a plaintiff must either (a) allege facts to show that defendants had both motive and opportunity to commit fraud or (b) allege facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.

Press, 166 F.3d at 538 (citations and internal quotations omitted); Trs. Of the Iron Workers Dist. Council Pension, Health & Welfare, Annuity, Vacation, & Educ. Funds v. Mayo (In re Mayo), No, 04-11106, Adv. No. 04-1067, 2007 Bankr. LEXIS 3197, *32 (Bankr. D. Vt. Sept. 17, 2007) (applying standard of intent from securities law cases to determine defalcation under § 523(a)(4) pursuant to Hyman).  "'Where motive [to commit fraud] is not apparent, it is still possible to plead scienter by identifying circumstances indicating conscious behavior by the defendant, though the strength of the circumstantial allegations must be correspondingly greater.'" Ackerman v. Arotech Corp., 608 F. Supp. 2d 372, 381 (E.D.N.Y. 2009) (quoting Kalnit v. Eichler, 264 F.3d 131, 142 (2d Cir. 2001).

In the securities law context, the Second Circuit has defined conscious misbehavior as "deliberate illegal behavior, such as securities trading by insiders privy to undisclosed and material information, or knowing sale of a company's stock at an unwarranted discount." Novak v. Kasaks, 216 F.3d 300, 308 (2d Cir. 2000).  "In order to plead conscious misbehavior or recklessness, plaintiffs must 'specifically allege[] defendants' knowledge of facts or access to information contradicting their public statements.'" In re eSpeed, Inc. Sec. Litig., 457 F. Supp. 2d 266, 292 (S.D.N.Y. 2006) (quoting Novak, 216 F.3d at 308).  Plaintiffs have "the burden of alleging that defendants had knowledge of specific facts or documents that they disregarded.  In

re Rhodia S.A. Sec. Litig., 531 F. Supp. 2d 527, 549-550 (S.D.N.Y. 2007) (granting the defendants' motion to dismiss where the plaintiffs did not allege that the defendants were involved in the negotiation of a particular amendment in an agreement, which contained the alleged obligations that the defendants failed to perform).

Similarly, in the bankruptcy context, a plaintiff must demonstrate that the defendant had actual knowledge of the fiduciary duty that was breached in order to establish that the resulting debt is non-dischargeable under § 523(a)(4). "A debtor who knowingly and intentionally violated her fiduciary duties under PACA may be liable for defalcation." Tucker, 2007 Bankr. LEXIS 1322 at *19 (holding that the Defendant's failure to preserve PACA assets constitutes defalcation where the Defendant's awareness of her duties under PACA is an undisputed fact); Bartlett, 397 B.R. at 619 (finding defalcation where every invoice received, which "contained specific language regarding the statutory trust", was signed by a company representative, and the PACA license held by the Defendant "makes specific reference to the statute").

Two cases decided within the Second Circuit since Hyman find that defalcation, as set forth in Hyman, may be satisfied by establishing that the defendant had actual knowledge of his duty to preserve trust assets, and failed to do so. In Bank of Castille v. Kjoller (In re Kjoller), 395 B.R. 845 (Bankr. W.D.N.Y. 2008), the court held that the debtor's use of cash collateral may constitute a defalcation under § 523(a)(4), but found that it could not be determined on the record before the court whether defalcation had occurred, because it was unclear whether the Chapter 13 debtor was in fact aware of her fiduciary duties under §§ 1304 and 363(c)(2) and (4). In Mayo, 2007 Bankr. LEXIS 3197, the court granted summary judgment to the plaintiffs on a non-dischargeability claim under § 523(a)(4), holding that the defendant's use of funds for

business and personal expenses constituted defalcation because he had actual knowledge of his fiduciary duty under a collective bargaining agreement ("CBA") to distribute the funds withheld from employee wages into pension and welfare funds for his union employees, as evidenced by the fact that he had initialed the pertinent provisions of the CBA.

It is undisputed that the Plaintiffs properly preserved their rights under PACA by including the required PACA statutory language on their invoices:

> The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930. The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.

7 U.S.C. § 499e(c)(4).

The Plaintiffs' Statement of Material Facts states that the invoices were sent to the Defendant, which the Defendant does not dispute. However, unlike the plaintiffs in Mayo, the Plaintiffs have not presented any evidence or made any assertions that the Defendant actually received the invoices, or had any other notice or actual knowledge of his duties as a PACA trustee. Nor does the Plaintiff's Statement of Material Facts contain such an allegation. The record before the Mayo Court, by contrast, clearly established that the Defendant read and acknowledged his duties under the CBA:

> Because the [d]efendant signed the CBA and initialed Proposal 3, he is charged with the actual knowledge that he had a duty to pay certain amounts into various [f]unds. In this [c]ourt's view, the [d]efendant's failure to make the requisite payments represents a material and knowing breach of his fiduciary duty and constitutes the kind of "knowing

      misconduct" contemplated by the Second Circuit's new
      defalcation standard.

<u>Mayo</u>, 2007 Bankr. LEXIS 3197 at *35.

  Nor does the record contain any evidence of the type relied on in <u>Bartlett</u> to find that the defendant had the requisite knowledge if his fiduciary duties under PACA. There, the record included invoices referring to the defendant's statutory duty, which had been signed, as well as the defendant's PACA license, which specifically referred to his obligations under PACA. <u>Bartlett</u>, 397 B.R. at 619.

  "By requiring the courts to make appropriate findings of conscious misbehavior..., the standard [for defalcation]...insures that the harsh sanction of non-dischargeability is reserved for those who exhibit 'some portion of misconduct.'" <u>Hyman</u>, 502 F.3d at 68-69 (<u>quoting</u> <u>Cent. Hanover Bank & Trust Co. V. Herbst</u>, 93 F.2d 510, 512 (2d Cir. 1937)). Absent evidence in the record of the Defendant's actual knowledge of his duties under PACA, and construing the facts in a manner that resolves all reasonable inferences in the Defendant's favor, the Court finds that a material issue of fact exists, preventing this court from concluding on summary judgment that the Defendant's failure to hold sale proceeds in trust for the Plaintiffs, constitutes defalcation as defined by the Second Circuit.

<u>Motion to Strike</u>

  Plaintiffs argue that pursuant to Local Civil Rule 6.1(b)[2], the Defendant's opposition should have been served within ten business days after service of the moving papers. However,

---

[2] Local Civil Rule 6.1(b) provides in relevant part: "(b) On all motions, petitions, applications, and exceptions other than those described in Rule 6.1(a). . . (2) any opposing affidavits and answering memoranda shall be served within ten business days after service of the moving papers."

the Local Bankruptcy Rules for the Eastern District of New York, require that opposition be served "so as to be received not later than 3 [b]usiness [d]ays before the hearing." E.D.N.Y. LBR 9006-1(a)(ii). The Defendant filed his opposition on May 13, 2009. The Plaintiffs set the hearing date for April 16, 2009. On April 6, 2009, the Court adjourned the hearing date to May 21, 2009. The Defendant did not file proof of service of his opposition on the Plaintiffs. However, the Plaintiffs filed a reply five days later, on May 18, 2009, which indicates that the Defendant's opposition was received in a timely manner. Accordingly, the Plaintiffs' motion to strike the Defendant's opposition as untimely is denied.

## Conclusion

For the foregoing reasons, the Plaintiffs' motion for summary judgment is granted in part, to the extent that the Court finds that the Defendant acted in a fiduciary capacity under § 523(a)(4), and denied in part, to the extent that an issue of material fact exists whether the Defendant committed a defalcation. A separate order shall issue herewith.

Dated: Brooklyn, New York
September 11, 2009

*/s/Carla E. Craig*
CARLA E. CRAIG
Chief United States Bankruptcy Judge